UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| DIANA MEDEIROS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>JUDGMENT ACQUISITIONS UNLIMITED INC.,<br><br>Defendant. | Civil Action No. 1:23-CV-13024-BEM |

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Now comes Plaintiff Diana Medeiros ("Plaintiff") and hereby moves this Court for enforcement of the settlement agreement between the parties. As grounds for this motion, Plaintiff states as follows:

**A. Background**

1. Plaintiff initiated this action on December 8, 2023, individually and on behalf of all others similarly situated (the putative "Class members") challenging Defendant Judgment Acquisitions Unlimited Inc's ("Defendant") violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. ("FDCPA").

2. After several settlement discussions between counsel for the parties, the parties ultimately reached a settlement regarding all material terms on May 28, 2025. The material terms were discussed and agreed upon by the parties, and Plaintiff's counsel sent Defendant's counsel confirming the parties' settlement agreement.

3. On May 29, 2025, Defendant's counsel responded to Plaintiff's counsel's email confirming the parties settlement indicating that Defendant's counsel would

1

"begin working on the release" and requested an IRS Form W-9 and payment instructions for Plaintiff. Plaintiff's counsel responded the same day providing a copy of Plaintiff's counsel's W-9.

4. On June 3, 2025, the Courtroom Clerk for the Honorable Brian E. Murphy emailed counsel for the parties stating, "The deadline in this case for filing the Motion for Class Certification was yesterday and no motion was filed. The Judge is aware that the parties were engaged in settlement discussions and wanted me to check if the case has settled?

5. Plaintiff's counsel replied to the email from the Courtroom Clerk, which included Defendant's counsel, and confirmed the parties' settlement by stating, "The parties indeed recently resolved this matter as of the end of last week."

6. On June 17, 2025, Plaintiff's counsel emailed Defendant's counsel to follow up regarding the draft release, and Defendant's counsel responded the same day providing Plaintiff with the draft Full and Final Release of All Claims (the "Release").

7. The language of the Release, which was drafted and approved by Defendant, indicated that Defendant would send a check to Plaintiff's counsel "within 30 days of receipt of this Release that has been executed by Diana Medeiros, and a Form W-9 for Kazerouni Law Group, APC."

8. The language of the Release, which was drafted and approved by Defendant, stated: "If any party to this Release initiates a lawsuit to enforce the terms of this Release, the prevailing party will be entitled to the reasonable attorneys' fees, costs and expenses it has incurred in such action."

9. On July 22, 2025, Plaintiff's counsel sent Defendant's counsel an executed and notarized copy of the Release. Defendant's counsel responded the same day stating they would "send this along to [Defendant] for signature and return."[1] Defendant's counsel also confirmed that Defendant had previously received the Form W-9 for Kazerouni Law Group, APC.

10. On August 15, 2025, Plaintiff's counsel reached out to Defendant's counsel via email stating, "I just wanted to check in to see if you have an ETA from your client on the settlement payment since we have a status report coming due soon." Defendant's counsel responded the same day indicating they would follow up with Defendant.

11. On August 26, 2025, Plaintiff's counsel followed up with Defendant' counsel again stating, "Just following up on this as the settlement payment hasn't been received yet and was expected last week." Defendant's counsel responded the same day apologizing for the delay and indicating they had reached out Defendant again to ask for a status update.

12. On August 29, 2025, Plaintiff's counsel sent Defendant's counsel a draft joint status report.

13. On September 2, 2025, Plaintiff's counsel sent Defendant's counsel a follow up email regarding the parties' draft joint status report.

14. On September 3, 2025, Plaintiff's counsel sent Defendant's counsel another follow up email regarding the parties' draft joint status report. Defendant's

---

[1] The parties' Release includes a confidentiality clause. However, Plaintiff will be able to produce a copy of the Release if so requested by the Court.

counsel responded the same day indicating that they had lost contact with Defendant and had no option but to withdraw as counsel.

15. The same day, Plaintiff's counsel reached out to Defendant's counsel to meet and confer in good faith regarding Plaintiff's anticipated motion to enforce the parties' settlement agreement given that the settlement payment was not timely delivered and there was no indication from Defendant that it would be forthcoming.

16. Counsel for the parties held a telephonic conference of counsel on September 4, 2025, to meet and confer regarding Plaintiff's anticipated motion to enforce the settlement, and Defendant's counsel took no position as to whether it would consent to or oppose Plaintiff's motion to enforce the settlement.

17. On September 4, 2025, the parties appeared via Zoom for a Status Conference before the Honorable Brian E. Murphy. Plaintiff's counsel informed the Court that the parties had a settlement agreement, but the terms had not yet been fulfilled by Defendant. Defendant's counsel did not disagree that the parties had a settlement agreement. Plaintiff advised the Court that Plaintiff would file a motion to enforce the settlement agreement by September 18, 2025.

B. Argument

"Settlement agreements enjoy great favor with the courts 'as a preferred alternative to costly, time-consuming litigation.' Thus, a party may seek to enforce the agreement's terms when the other party refuses to comply." *Fidelity and Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 5 (1st Cir. 2008) (internal citations omitted). When, as in the present case, "the settlement collapses before the original suit is dismissed, the party seeking to enforce the agreement may file a motion with the trial court. The trial court may summarily enforce the agreement, provided

that there is no genuinely disputed question of material fact regarding the existence or terms of that agreement." *Ibid*.

It is well-settled that "a contract is enforceable when it contains all material terms, and the parties intend to be bound by it." *See, e.g., Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878 (2000). Further, "even though subsidiary matters may sometimes be the subject of bargaining, norms exist for their customary resolution and a dispute over these terms will not necessarily bar enforcement of an agreement." *New Commonwealth Residential Co., LLC v. Hack*, 2007 WL 3244636, at *2 (Mass.Super.Ct.2007), citing *Goren v. Royalty Investments, Inc.*, 25 Mass. App. Ct. 137, 141 (1987).

Here, the parties agreed to all material terms and, in multiple communications, demonstrated their intent to be bound by said terms. As a result, a settlement agreement was reached between the parties, and Plaintiff asks that this Court now enforce it.

1. **There is no dispute that the parties agreed upon all material terms to the settlement and intended to be bound by the same.**

The parties engaged in settlement discussions and on May 28, 2025, the parties exchanged emails confirming the material terms of the settlement and that the parties had reached a settlement agreement. Defendant approved the draft Release, which Plaintiff executed and returned to Defendant on July 22, 2025. As of July 22, 2025, Plaintiff had fully performed all steps necessary and was entitled to receive a settlement check from Defendant within 30 days after signing the Release. At no point in the communications between counsel was there any indication that Defendant did not intend to be bound by the terms of the parties' settlement.

//
//
//

### 2. The parties' settlement agreement is enforceable, even in the absence of Defendant's signature on the Release.

There is no requirement that an agreement be signed in order for contracting parties to be bound. *See, e.g. Quint v. A.E. Staley Mfg. Co.,* 246 F.3d 11, 15 (1st Cir. 2001). If the parties "have agreed upon all material terms, it may be inferred that the purpose of a final document which the parties agreed to execute is to serve as a polished memorandum of an already binding contract." *Goren v. Royalty Investments, Inc., 25 Mass.App.Ct.* 137, 140 (1987). Further, the fact that the parties "contemplated execution of a more formal agreement does not preclude enforcement" of the contract. *Fidelity and Guar. Ins. Co. v. Star Equip. Corp.*, 541 F.3d 1, 6 (1st Cir. 2008).

Here, as discussed above, there was an agreement between the parties on material terms and intent to be bound thereby. Thus, there is an enforceable settlement agreement and contract between the parties, and the fact that the parties endeavored to further memorialize the same through the execution of the Release is of no significance. *See, e.g.*, *McCarthy v. Tobin*, 429 Mass. 84, 86-88 (1999) ("mutual manifestations of assent . . . sufficient to make a contract will not be prevented from so operating by the mere fact that the parties also manifest an intention to prepare and adopt a written memorial thereof") (internal citations and quotations omitted). *Even if* Defendant had a change of heart after Plaintiff's execution of the Release, "a settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive. Therefore, 'when a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect.'" *U.S. v. 434 Main Street, Tewksbury, Mass*., 2011 WL 6337454, at *3 (D.Mass.2011); *Advanced Voice Communications, Inc. v. Gain*, 2010 WL 677459, at *6 (D.R.I., 2010) (where parties had agreed on material terms, defendant's change of

mind after the agreement was reached was an insufficient basis on which to deny enforcement of settlement agreement).

### 3. **<u>Plaintiff is entitled to recover attorney's fees and costs for Plaintiff's motion to enforce the Parties' settlement agreement.</u>**

The Release indicated that prevailing party will be entitled to the reasonable attorneys' fees, costs and expenses it has incurred in an action pursuing enforcement of the parties' settlement agreement. Here, although Plaintiff has not filed a separate action, Plaintiff believes the Release's language entitles Plaintiff to recover attorney's fees and costs for Plaintiff's instant motion to enforce the parties' settlement agreement if the Court grants Plaintiff's motion, making Plaintiff the prevailing party. Accordingly, in the event the Court grants Plaintiff's motion to enforce the settlement agreement, Plaintiff respectfully requests that the Court also order Defendant to pay Plaintiff's attorney's fees and costs incurred in pursuing enforcement of the settlement agreement.

## C. Conclusion

WHEREFORE, for the reasons stated above, Plaintiff respectfully requests that this Honorable Court grant Plaintiff's motion to enforce the settlement and the relief requested herein.

Respectfully submitted,

Dated: September 18, 2025   **KAZEROUNI LAW GROUP, APC**

*/s/ Mona Amini*
Mona Amini, Esq. (*admitted pro hac vice*)
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808/Fax: (800) 520-5523

Nicola Yousif, Esq. (Bar No. 679545)
Matthew McKenna, Esq. (Bar No. 705644)
SHIELD LAW, LLC
157 Belmont St.
Brockton, MA 02301

Telephone: (508) 588-7300/Fax: (508) 588-7303

*Attorneys for Plaintiff Diana Medeiros*

## CERTIFICATE OF SERVICE

I, Mona Amini, hereby certify that this document, and all related attachments, filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF (NEF) and paper copies will be sent to those indicated as non-registered participants on September 18, 2025

/s/ *Mona Amini*
Mona Amini, Esq. (*admitted pro hac vice*)